UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


KEARNEY LOUGHLIN                                    CIVIL ACTION

v.                                                 NO. 15-649

GREGORY TWEED, ET AL.                              SECTION "F"


ORDER AND REASONS

Before the Court is defendant Gregory Tweed's motion to dismiss the plaintiff's complaint for monetary damages.  For the reasons that follow, the motion is DENIED.

Background

Kearney Loughlin, a Louisiana attorney, brings suit against the Louisiana Attorney Disciplinary Board, Gregory Tweed (a deputy disciplinary counsel of the Board's Office of Disciplinary Counsel), Steven Tew in his official capacity as the Chair of the Board, and Charles Plattsmier in his official capacity as Chief Disciplinary Counsel, challenging their prosecution of him based on the content of his professional Web site.  Tweed responds that he is immune from suit.  This lawsuit and the allegations of Loughlin's grievances cast the legal profession in a poor light, at best.

It is important to this case that in August 2009, this Court considered the constitutionality of certain provisions of the

1

Louisiana Rules of Professional Conduct as they relate to attorney advertising and the First Amendment.  <u>Public Citizen, Inc., et al. v. Louisiana Attorney Disciplinary Bd., et al.</u>, 642 F.Supp.2d 539 (E.D. La. 2009).  The Fifth Circuit subsequently affirmed in part and reversed in part.  632 F.3d 212 (5th Cir. 2011).  This Court analyzed several Louisiana Rules of Professional Conduct; the plaintiff in this case focuses on Rule 7.6(d):

> Advertisements.  All computer-access communications concerning a lawyer's or law firm's services, other than those subject to subdivisions (b)[1] and (c)[2] of this Rule, are subject to the requirements of Rule 7.2 when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain.

This Court distinguished Internet information from the more popular fads of tv, radio, and print solicitations of law cases, and found that the defendants, which included the Louisiana Attorney Disciplinary Board:

> ha[d] not shown that the State studied online advertising techniques or methods and then attempted to formulate a Rule that directly advanced the State's interests and was narrowly tailored with respect to Internet advertising. Instead, the State, through its high court, simply

---

[1] Subdivision (b) is entitled "Internet Presence" and governs "[a]ll World Wide Web sites and home pages accessed via the Internet that are controlled, sponsored,, or authorized by a lawyer or law firm and that contain information concerning the lawyer's or law firm's services." Subdivision (b)(3) states that such Web sites "are considered to be information provided upon request and, therefore, are otherwise governed by the requirements of Rule 7.9." Rule 7.9, in turn, states that such information shall comply with the requirements of Rule 7.2 unless otherwise provided in Rule 7.9.

[2] Subdivision (c) applies to unsolicited electronic mail communications.

applied the same Rules as those developed for television, radio, and print ads to Internet advertising. This Court is persuaded that Internet advertising differs significantly from advertising in traditional media.

<u>Public Citizen</u>, 642 F.Supp.2d at 559.  This Court held Rule 7.6(d) unconstitutional, finding that the defendants had not met their burden of showing that the Rule directly and materially advanced the State's interests or was narrowly tailored.   <u>Id.</u>

Loughlin contends that he maintained a Web site from 2007 to 2009, which stated that he held a Certificate of Specialization in Maritime Law from Tulane University Law School.[3]  It also described the firm as "a plaintiff-oriented pure litigation firm specializing in maritime personal injury and death claims."[4]  On February 2, 2012, the Office of Disciplinary Counsel (ODC) initiated formal charges against Loughlin, alleging that on or about October 13, 2011, Deputy Disciplinary Counsel Tweed had personally seen the so-called offending Web site, and that the page "states that you 'specialize' in 'maritime personal injury and death cases.' However, no such specialty is recognized by the Louisiana Board of Legal Specialization.  Further, the ad does not contain the full name of any other organization granting such certification."  The

---

[3] Tulane offers what it calls Certificates of Specialization in Civil Law, Environmental Law, European Legal Studies, International & Comparative Law, Maritime Law, and Sports Law. Approximately one-third of graduates receive a certificate.

[4] Perhaps a more appropriate, or exact description would be to say the firm practice emphasizes maritime personal injury and death claims.  More likely, however, a distinction without a difference.

3

ODC alleged that the Web site violated Rule 7.2(c)(1)(B) and Rule 7.2(c)(5), adding later that it also violated former Rule 7.4.[5]

Louisiana Rule of Professional Conduct 7.2(c)(1)(B) redundantly states:

> (1) A lawyer shall not make or permit to be made a false, misleading or deceptive communication about the lawyer, the lawyer's services or the law firm's services. A communication violates this Rule if it . . . (B) is false, misleading or deceptive.

Rule 7.2(c)(5) states:

> (5) Communication of Fields of Practice. A lawyer may communicate the fact that the lawyer does or does not practice in particular fields of law. A lawyer shall not state or imply that the lawyer is "certified," "board certified," an "expert" or a "specialist" except as follows:

> > (A) Lawyers Certified by the Louisiana Board of Legal Specialization. A lawyer who complies with the Plan of Legal Specialization, as determined by the Louisiana Board of Legal Specialization, may inform the public and other lawyers of the lawyer's certified area(s) of legal practice. Such communications should identify the Louisiana Board of Legal Specialization as the certifying organization and may state that the lawyer is "certified," "board certified," an "expert in (area of certification)" or a "specialist in (area of certification)."

> > (B) Lawyers Certified by Organizations Other Than the Louisiana Board of Legal Specialization or Another State Bar. A lawyer certified by an organization other than the Louisiana Board of Legal Specialization or

---

[5] At this early stage of the proceedings, the Court does not have evidence before it. Thus, the procedural background is taken largely from the complaint. In their answer, the defendants deny many of the allegations, without explanation.

another state bar may inform the public and other lawyers of the lawyer's certified area(s) of legal practice by stating that the lawyer is "certified," "board certified," an "expert in (area of certification)" or a "specialist in (area of certification)" if:

> (i) the lawyer complies with Section 6.2 of the Plan of Legal Specialization for the Louisiana Board of Legal Specialization; and,

> (ii) the lawyer includes the full name of the organization in all communications pertaining to such certification. A lawyer who has been certified by an organization that is accredited by the American Bar Association is not subject to Section 6.2 of the Plan of Legal Specialization.

Former Rule 7.4, which was repealed and replaced with Rule 7.2(c)(5), provided:

> A lawyer shall not state or imply that the lawyer is certified, or is a specialist or expert, in a particular area of law, unless such certification, specialization or expertise has been recognized or approved in accordance with the rules and procedures established by the Louisiana Board of Legal Specialization.

Loughlin contends that the above rules do not apply to attorneys' Web sites, which are not considered advertisements, but, rather, information provided to a client upon the client's request. Loughlin submits that he finds support for this argument in: the text of Rule 7.9;[6] the defendants' representations at oral argument

---

[6] Rule 7.9 Information about a Lawyer's Services Provided Upon Request

(a) Generally. Information provided about a lawyer's or

to the Fifth Circuit in <u>Public Citizen, Inc. v. Louisiana Attorney</u>

law firm's services upon request shall comply with the requirements of Rule 7.2 unless otherwise provided in this Rule 7.9.

(b) Request for Information by Potential Client. Whenever a potential client shall request information regarding a lawyer or law firm for the purpose of making a decision regarding employment of the lawyer or law firm:

> (1) The lawyer or law firm may furnish such factual information regarding the lawyer or law firm deemed valuable to assist the client.

> (2) The lawyer or law firm may furnish an engagement letter to the potential client; however, if the information furnished to the potential client includes a contingency fee contract, the top of each page of the contract shall be marked "SAMPLE" in print size at least as large as the largest print used in the contract and the words "DO NOT SIGN" shall appear on the client signature line.

> (3) Notwithstanding the provisions of subdivision (c)(1)(D) of Rule 7.2, information provided to a potential client in response to a potential client's request may contain factually verifiable statements concerning past results obtained by the lawyer or law firm, if, either alone or in the context in which they appear, such statements are not otherwise false, misleading or deceptive.

(c) Disclosure of Intent to Refer Matter to Another Lawyer or Law Firm. A statement and any information furnished to a prospective client, as authorized by subdivision (b) of this Rule, that a lawyer or law firm will represent a client in a particular type of matter, without appropriate qualification, shall be presumed to be misleading if the lawyer reasonably believes that a lawyer or law firm not associated with the originally-retained lawyer or law firm will be associated or act as primary counsel in representing the client. In determining whether the statement is misleading in this respect, the history of prior conduct by the lawyer in similar matters may be considered.

6

Disciplinary Bd., 632 F.3d 212 (5th Cir. 2011);[7] the Fifth's Circuit's ruling in that case; and this Court's ruling in that same case, 642 F.Supp.2d 539 (E.D. La. 2009).

In his disciplinary action, Loughlin asserted that the rules at issue were unconstitutional restrictions of speech, and he demanded proof that Tweed personally saw the former Web site, as ODC alleged in the formal charges. Loughlin submits that the defendants submitted no such evidence, and, significantly, that Tweed refused to testify at the administrative hearing held on February 5, 2013; that the hearing committee allowed Tweed to give unsworn testimony and introduce new and unauthenticated exhibits, which the Board later adopted as "facts." The hearing committee, in its report issued on May 21, 2013, found that Rules 7.2(c)(1)(B) and 7.2(c)(5) did not apply to Web sites, but that Loughlin's use of the word "specializing" violated former Rule 7.4. The committee recommended that he be publicly reprimanded and assessed other penalties and fines.

Loughlin objected to the hearing committee report and briefed the issues to the full Board, which heard argument on July 18, 2013. Nine months later, the Board issued its ruling, in which it adopted all of the hearing committee's factual findings. The

---

[7] At oral argument to the Fifth Circuit, counsel for the Louisiana Attorney Disciplinary Board told the panel that a lawyer's past successes, though not mentionable in a television or radio commercial, can be displayed on the lawyer's Web site, i.e., that Rule 7.2(c)(1)(D) did not apply to Web sites.

Board, however, rejected the hearing committee's conclusion that Rules 7.2(c)(1)(B) and 7.2(c)(5) did not apply to Web sites, but agreed that ODC had failed to prove a violation of those rules because Loughlin's Web site was offline at the time the rules were in force (apparently contrary to the impression left by Tweed). As to former Rule 7.4, the Board agreed with the hearing committee that Loughlin's former Web site violated it. The Board noted, however, that because ODC declined to put on evidence, the Board could not reach the constitutionality of Rule 7.4. Nonetheless, the Board agreed that Loughlin should be publicly reprimanded and subjected to other fines and punishment.[8]

Loughlin appealed the Board's ruling to the Louisiana Supreme Court, which, it is helpful to underscore, dismissed all charges against him, finding that his actions in drafting his Web site were not taken with a culpable mental state and that they caused no harm to the public. In re Loughlin, 148 So.3d 176, 178 (La. 2014). The Supreme Court did not reach the constitutional issues.[9]

Loughlin then filed suit in the Court, asking for injunctive relief, damages, and that the defendants be held in contempt for enforcing Rule 7.6(d) contrary to court order. As to damages,

---

[8] Loughlin also contends that the Board refused to consider representations it allegedly made to the Fifth Circuit in Public Citizen.

[9] This Court does not gratuitously reach constitutional issues that may be avoided and resolved in other ways under the law. See Reichle v. Howards, 132 S.Ct. 2088, 2093 (2012).

Loughlin seeks, in addition to attorney's fees, costs, and compensatory contempt, "all available general, special, and punitive damages against defendant Tweed allowed by [42] U.S.C. §§ 1983 and 1988 or other applicable law, related to the prosecution of complainant." Specifically, Loughlin objects to Tweed's initiating the charges against him as the complaining witness and later refusing to give sworn testimony and be cross-examined. He also contends that Tweed falsely asserted that Loughlin's Web site was online in 2011, when it was not, and he "knowingly concealed the Judgment rendered by this Court [in <u>Public Citizen</u>] and knowingly concealed the judicial admissions and representations made by defendants to the Fifth Circuit [also in <u>Public Citizen</u>]. Accordingly, Tweed is liable for damages under Section 1983 for violating complainant's right to free speech guaranteed by the First Amendment." Loughlin further asserts that his rights at issue were clearly established at all relevant times, that he was denied his Sixth Amendment right to confront Tweed as the witness against him, and that Tweed knew that Loughlin's Web site was protected by the First Amendment and not subject to the attorney advertising rules.

Defendant Tweed moves to dismiss the claim for monetary damages, asserting qualified immunity and absolute prosecutorial immunity. He also submits that the Eleventh Amendment to the U.S. Constitution bars claims for monetary damages, and that he in his

official capacity is not a "person" for purposes of § 1983.[10] Because this case involves constitutional issues and matters of widespread concern in the legal community, this Court granted Loughlin's request for oral argument on the motion.

I.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Such a motion is rarely granted because it is viewed with disfavor. See Lowrey v. Tex. A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997) (quoting Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982)).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (citing FED. R. CIV. P. 8). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

Thus, in considering a Rule 12(b)(6) motion, the Court

---

[10] Tweed submits that it is unclear from the complaint whether he is sued in his individual or official capacity. It is, in fact, quite clear that Tweed is sued in his individual capacity. Thus, his Eleventh Amendment and "person" arguments fail.

"accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  <u>See</u> <u>Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit</u>, 369 F.3d 464 (5th Cir. 2004) (quoting <u>Jones v. Greninger</u>, 188 F.3d 322, 324 (5th Cir. 1999)).  But, in deciding whether dismissal is warranted, the Court will not accept conclusory allegations in the complaint as true.  <u>Kaiser</u>, 677 F.2d at 1050.  Indeed, the Court must first identify allegations that are conclusory and thus not entitled to the assumption of truth. <u>Iqbal</u>, 556 U.S. at 678-79.  A corollary: legal conclusions "must be supported by factual allegations." <u>Id.</u> at 678.  Assuming the veracity of the well-pleaded factual allegations, the Court must then determine "whether they plausibly give rise to an entitlement to relief." <u>Id.</u> at 679.  It is well established that "pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers.  However, regardless of whether the plaintiff is proceeding pro se or is represented by counsel, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." <u>Taylor v. Books A Million, Inc.</u>, 296 F.3d 376, 378 (5th Cir. 2002) (internal quotations and citations omitted).

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" <u>Gonzalez v. Kay</u>, 577 F.3d 600, 603 (5th Cir. 2009) (quoting <u>Iqbal</u>, 556 U.S. at 678) (internal

quotation marks omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Twombly, 550 U.S. at 555 (citations and footnote omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.").  This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 679.  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  Id. at 678 (internal quotations omitted)(citing Twombly, 550 U.S. at 557).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'" thus "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (alteration in original)(citation omitted).

In deciding a motion to dismiss, the Court may consider documents that are essentially "part of the pleadings."  That is, any documents attached to or incorporated in the plaintiff's

complaint that are central to the plaintiff's claim for relief. <u>Causey v. Sewell Cadillac-Chevrolet, Inc.</u>, 394 F.3d 285, 288 (5th Cir. 2004) (citing <u>Collins v. Morgan Stanley Dean Witter</u>, 224 F.3d 496, 498-99 (5th Cir. 2000)).  Also, the Court is permitted to consider matters of public record and other matters subject to judicial notice without converting a motion to dismiss into one for summary judgment.  See <u>United States ex rel. Willard v. Humana Health Plan of Tex. Inc.</u>, 336 F.3d 375, 379 (5th Cir. 2003).

II.

Title 42, U.S.C. § 1983 creates a damages remedy for the violation of federal constitutional or statutory rights under color of state law; it provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any ... person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

To establish § 1983 liability, the plaintiff must satisfy three elements:

(1) deprivation of a right secured by the U.S. Constitution or federal law,

(2) that occurred under color of state law, and

(3) was caused by a state actor.

<u>Victoria W. v. Larpenter</u>, 369 F.3d 475, 482 (5th Cir. 2004) (citation omitted).

13

A. *Absolute Prosecutorial Immunity*

In Imbler v. Pachtman, 424 U.S. 409 (1976), the Supreme Court held that a state prosecutor enjoys absolute immunity from § 1983 suits for the initiation and pursuit of a criminal prosecution. In the aftermath of Imbler, the Court has expounded upon the contours of absolute immunity by clarifying that the application of absolute prosecutorial immunity is guided and informed by a functional approach based on the specific activities that give rise to the cause of action. See Buckley v. Fitzsimmons, 509 U.S. 259 (1993); Burns v. Reed, 500 U.S. 478 (1991). That is, the actions of a prosecutor are not absolutely immune merely because they are preformed by a prosecutor. Buckley, 509 U.S. at 273. The crux of Imbler and its progeny is that acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the state, are entitled to the protections of absolute immunity. Buckley, 509 U.S. at 273. The acts involved need not take place in the courtroom. Id. at 272. And perhaps even more importantly, when the activities giving rise to the cause of action do occur in the prosecutor's role as an advocate for the state, his motivations and intentions are irrelevant to whether absolute immunity applies, as are allegations of maliciousness, recklessness, dishonesty, or just plain negligence. Imbler, 424 U.S. at 427. And so, once the functional test is satisfied, the immunity is unconditional.

14

B. *Qualified Immunity*

Qualified immunity, however, is the norm, and it will replace absolute immunity when the prosecutor engages in certain functions outside the scope of his prosecutorial role, such as providing legal advice to law enforcement, Burns, 500 U.S. at 495-96, or making statements to the press, Buckley, 509 U.S. at 277. When a plaintiff seeks money damages from government officials for alleged violations of constitutional or statutory rights, officials sued in their individual capacities may invoke the defense of qualified immunity. Because it is an immunity from suit, and not a defense to liability, courts are advised to resolve the issue "at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam).

"Qualified immunity shields government officials from civil damages liability," the U.S. Supreme Court has reiterated, "unless the official violated a statutory or constitutional right that was clearly established that the time of the challenged conduct." Reichle v. Howards, 132 S.Ct. 2088, 2093 (2012)(citing Ashcroft v. al-Kidd, 131 S.Ct. 2074, 2080 (2011)); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (This doctrine protects government officials against individual civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."). "Qualified immunity balances two important interests -- the need to hold

public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223 (2009) (noting that "[t]he protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."). In fact, "[q]ualified immunity represents the norm" and "is designed to shield from civil liability all but the plainly incompetent or those who violate the law." Brady v. Fort Bend County, 58 F.3d 173, 174 (5th Cir. 1995).

In resolving a government official's qualified immunity defense, courts have traditionally applied the two-prong process articulated in Siegert v. Gilley, 500 U.S. 226 (1991), and confirmed by the Supreme Court again in Saucier v. Katz, 533 U.S. 194 (2001). First, the Court must determine whether the plaintiff has shown a violation of a constitutional right. Id. at 201. The second inquiry requires the Court to consider "whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." Pearson v. Callahan, 555 U.S. 223 (2009). Although the Supreme Court has left to the district court's discretion the sequence for undertaking these two inquiries, the Supreme Court has increasingly indicated a preference for first considering whether a purported right was clearly established by

prior case law "without resolving the often more difficult question whether the purported right exists at all." Reichle, 132 S.Ct. at 2093 ("This approach comports with our usual reluctance to decide constitutional questions unnecessarily."); Camreta v. Greene, 131 S.Ct. 2020, 2031 (2011) (observing that "our usual adjudicatory rules suggest that a court *should* forbear resolving this issue") (emphasis in original); Pearson, 555 U.S. at 238-39 (listing circumstances in which courts might be best served to bypass the first step of the Saucier process, such as "when qualified immunity is asserted at the pleadings stage, the precise factual basis for the plaintiff's claim or claims [is] hard to identify").

In other words, qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law, so we do not deny immunity unless existing precedent must have placed the statutory or constitutional question beyond debate." Morgan v. Swanson, 659 F.3d 359, 370-71 (5th Cir. 2011) (en banc) (internal quotations, citations, and footnotes omitted). Once a defendant has invoked the defense of qualified immunity, the burden shifts to the plaintiff to show that the defense is unavailable. Collier v. Montgomery, 569 F.3d 214, 217-18 (5th Cir. 2009); McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc). "Although qualified immunity is 'nominally an affirmative defense,' the plaintiff bears a heightened pleading burden 'to negate the defense once properly raised.'" Newman v. Guedry, 703 F.3d 757,

17

761 (5th Cir. 2012) (quoting Brumfield v. Hollins, 551 F.3d 322, 326 (5th Cir. 2008)).  In response to a qualified immunity defense, "plaintiffs suing governmental officials in their individual capacities must allege specific conduct giving rise to the constitutional violation." Anderson v. Pasadena Indep. Sch. Dist., 184 F.3d 439, 443 (5th Cir. 1999); see also FED. R. CIV. P. 7(a). The heightened pleading standard applicable in cases defended on qualified immunity grounds requires a plaintiff to plead "with factual detail and particularity, not mere conclusory allegations." Id.; see also Schultea v. Wood, 47 F.3d 1427, 1430 (5th Cir. 1995). In the § 1983 context, this standard translates in part into the requirement that the plaintiff "identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." Anderson, 184 F.3d at 443; DeLeon v. City of Dallas, 141 F. App'x 258, 261 (5th Cir. 2005).

III.

*A. Absolute Prosecutorial Immunity*

Tweed contends that he is absolutely immune from suit for his actions because as deputy counsel, he was acting akin to a criminal prosecutor.  He submits that the plaintiff's complaints relative to the investigation and prosecution of him clearly arise out of Tweed's exercise of his prosecutorial function because they challenge the fundamental decision as to whether to institute a

18

disciplinary action.  The Court cannot agree.  The case literature betrays the correctness of this assertion.

In Kalina v. Fletcher, a unanimous Supreme Court held that a prosecutor was not entitled to absolute immunity when she was acting as a complaining witness rather than a lawyer.  522 U.S. 130, 509-10.  There, a prosecutor personally vouched for the truth of facts set forth in a certification supporting the issuance of an arrest warrant.  Id. at 505.  Employing the functional test applicable to prosecutorial immunity claims, the Supreme Court found that the prosecutor had "performed an act that any competent witness might have performed." Id. at 509.  The Court noted that it "put[s] to one side those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigate officer rather than that of advocate." Id. at 507 (internal quotation omitted).  Tweed's conclusory claim that he is entitled to prosecutorial immunity because the Louisiana Attorney Disciplinary Counsel performs many of the same functions in attorney disciplinary proceedings as are performed by a criminal prosecutor is weak at best.  Under Kalina, even if Tweed were a criminal prosecutor, he would not be entitled to absolute immunity because of his role as a complaining witness.

B. *Qualified Immunity*

Tweed submits that Loughlin's complaint fails the two-part test for qualified immunity, stating simply that he "does not

properly plead facts establishing that any act of Mr. Tweed was unreasonable," that the "complaint is completely devoid of any well-pleaded facts as to any act or omission by Mr. Tweed which violated his rights other than bringing charges under rules that have not been held unconstitutional," and that "[n]o facts have been pled showing that Mr. Tweed was on notice that *his conduct in bringing formal charges* against Plaintiff *in performing his official duties* as Deputy Disciplinary Counsel would violate the clearly established constitutional rights of the plaintiff." (emphasis added). Loughlin correctly responds that the complaint specifically identifies the First, Sixth, and Fourteenth Amendments to the Constitution and sets forth, in detail, Tweed's improper conduct. Loughlin submits with good reason that his complaint shows that "Tweed's conduct was not only objectively unreasonable in light of clearly established law, but that he was deliberately indifferent to Loughlin's right to exercise free and truthful speech without fear of prosecution."

Tweed's argument for entitlement to qualified immunity centers on his decision to institute formal charges. If this were the conduct at issue, he would indeed even be entitled to absolute prosecutorial immunity. However, Tweed offers no compelling or reasonable argument that he is entitled to qualified immunity for -- if Loughlin's allegations are proven true -- serving as the complaining witness in a case bringing charges against Loughlin

based on the content of a defunct Web site and then refusing to testify under oath or present admissible evidence.

Accordingly, IT IS ORDERED that the motion to dismiss is hereby DENIED.

New Orleans, Louisiana, June 10, 2015

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE