UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

KEARNEY LOUGHLIN                              CIVIL ACTION

v.                                           NO.  15-649

GREGORY TWEED, ET AL.                        SECTION "F"

<u>ORDER AND REASONS</u>

Before the Court are the defendants' two motions: 1) defendant, Gregory Tweed's, motion for partial summary judgment on the plaintiff's Section 1983 claims; and 2) a motion for partial summary judgment on the constitutionality of certain Louisiana Rules of Professional Conduct brought by all defendants, Gregory Tweed; the Louisiana Attorney Disciplinary Board (LADB); R. Steven Tew, in his official capacity as Chair of the LADB; and Charles B. Plattsmier, in his official capacity as Chief Disciplinary Counsel of the LADB. For the reasons that follow, the motions for partial summary judgment are GRANTED.

**Background**

Louisiana attorney Kearney Loughlin brings this suit against the defendants challenging their prosecution of him based on the content of his professional Web site. The Louisiana Office of Disciplinary Counsel filed a series of formal charges against Mr.

Loughlin.[1] In June of 2008, the ODC received a complaint alleging that Mr. Loughlin had been held in contempt for making false statements of fact to a Louisiana district court judge.[2] The ODC filed formal charges against Loughlin in connection with the contempt complaint on June 23, 2011. In October of 2011, Gregory Tweed, a deputy disciplinary counsel to the ODC, initiated a second complaint against Loughlin. This second complaint is the primary subject matter of this lawsuit.

In a letter sent to Mr. Loughlin on October 28, 2011, Tweed explained that the ODC had received information indicating Loughlin maintained a Web site that did not appear to comply with Louisiana's Rules of Professional Conduct pertaining to attorney advertising. The letter stated:

> Our observation of the enclosed referenced web page
> indicates that your firm "specializes in maritime
> personal injury and death cases." However, no such

_____

[1] A total of three separate complaints were filed against Loughlin. The primary dispute in this case involves the third complaint related to violations of the attorney advertising rules. The second complaint, which involved a judgment holding Loughlin in contempt of court, is important because of its chronological connection to the third complaint. The first complaint, which charged that Loughlin engaged in inappropriate *ex parte* communications with an opposing expert witness, is unrelated.

[2] Judge Nadine M. Ramsey on August 18, 2006, held Loughlin in contempt for misrepresenting material facts regarding service of notice of hearing. See Talton v. USAA Casualty Ins. Co., No. 2005-12956 (Orleans Parish Civ. Dist. Ct. Sept. 12, 2006)(order holding in contempt). The Louisiana Fourth Circuit affirmed the judgment, and the Louisiana Supreme Court denied an application for certiorari.

specialty is recognized in this State. Also, the website states that the firm name is "Loughlin and Loughlin;" however, it is our understanding that you are a sole practitioner and your wife is employed full time by the US 5th Circuit.

In a letter dated November 6, 2011, Loughlin replied that he had requested that the Web site be taken down in 2009, and he was not aware that any part of the Web site was still accessible to the public. He said that he had contacted the Web host company and "informed it that a portion of the website was evidently still accessible." He explained that it was his understanding that, after speaking to the Web host company, "now none of the website is accessible by any means."[3] He added that "[t]he only specialization referred to on the former web site was to my Certificate of Specialty in Maritime Law issued by Tulane Law School," which Loughlin believed was in compliance with Louisiana's advertising rules.

In December of 2011, Tweed sent another letter to Loughlin advising him that the ODC had concluded as follows:

Based upon our personal observation of the website in question, it appears that you have violated Rule 7.2(c)(5) of the Rules of Professional Conduct. Specifically, there is not now, nor has there ever been,

---

[3] Loughlin attached to his letter an email exchange between himself and the Web host company. In response to Loughlin's inquiry about the Web site, the company replied, "All pages have been completely removed from our server and are no longer accessible. For some reason the Practice Area page was still listed in Google. If someone used that link they could see part of the site and navigate through it bypassing the redirect to the holding page we created."

a recognized specialty in the field of "maritime personal
injury and death cases" as set forth on the main page of
your website. While Tulane offers a degree program in
Admiralty, this does not create a recognized specialty
with the Louisiana Board of Legal Specialization. Even if
this degree program did create a recognized specialty,
there are formal requirements that must be adhered to in
the advertisement, which were not a part of the webpage
viewed by this office.

Tweed explained that the ODC would dispose of the matter by private
discipline if Mr. Loughlin would accept an admonition. Mr. Loughlin
declined the ODC's proposed admonition.

On February 2, 2012, the Office of Disciplinary Counsel
brought formal charges against Loughlin on the advertising
complaint. The ODC alleged that on or about October 13, 2011,
deputy disciplinary counsel Gregory Tweed had personally seen the
Web site, and that the page "states that you 'specialize' in
'maritime personal injury and death cases.' However, no such
specialty is recognized by the Louisiana Board of Legal
Specialization. Further, the ad does not contain the full name of
any other organization granting such certification." The ODC
alleged that the Web site violated Rule 7.2(c)(1)(B) and Rule
7.2(c)(5), adding later that it also violated former Rule 7.4.

Louisiana Rule of Professional Conduct 7.2(c)(1)(B) states:

(1) A lawyer shall not make or permit to be made a false,
misleading or deceptive communication about the lawyer,
the lawyer's services or the law firm's services. A
communication violates this Rule if it . . . (B) is
false, misleading or deceptive.

Rule 7.2(c)(5) states:

4

(5) Communication of Fields of Practice. A lawyer may communicate the fact that the lawyer does or does not practice in particular fields of law. A lawyer shall not state or imply that the lawyer is "certified," "board certified," an "expert" or a "specialist" except as follows:

(A) Lawyers Certified by the Louisiana Board of Legal Specialization. A lawyer who complies with the Plan of Legal Specialization, as determined by the Louisiana Board of Legal Specialization, may inform the public and other lawyers of the lawyer's certified area(s) of legal practice. Such communications should identify the Louisiana Board of Legal Specialization as the certifying organization and may state that the lawyer is "certified," "board certified," an "expert in (area of certification)" or a "specialist in (area of certification)."

(B) Lawyers Certified by Organizations Other Than the Louisiana Board of Legal Specialization or Another State Bar. A lawyer certified by an organization other than the Louisiana Board of Legal Specialization or another state bar may inform the public and other lawyers of the lawyer's certified area(s) of legal practice by stating that the lawyer is "certified," "board certified," an "expert in (area of certification)" or a "specialist in (area of certification)" if:

(i) the lawyer complies with Section 6.2 of the Plan of Legal Specialization for the Louisiana Board of Legal Specialization; and,

(ii) the lawyer includes the full name of the organization in all communications pertaining to such certification. A lawyer who has been certified by an organization that is accredited by the American Bar Association is not subject to Section 6.2 of the Plan of Legal Specialization.

5

Former Rule 7.4, which was repealed and replaced with Rule 7.2(c)(5), provided:

> A lawyer shall not state or imply that the lawyer is certified, or is a specialist or expert, in a particular area of law, unless such certification, specialization or expertise has been recognized or approved in accordance with the rules and procedures established by the Louisiana Board of Legal Specialization.

In Loughlin's answer to the ODC's formal charges, he stated, "Although the website was off-line, the Office of Disciplinary Counsel was able to access a single page of the website on October 13, 2011." Loughlin maintained that "[a] plain reading of the language in question is that the focus of respondent's practice was maritime personal injury and death claims, rather than a claim of particular expertise or legal specialization." But even if the website did claim a specialization, Loughlin contended that it complied with Rule 7.2(c)(5)(B) by naming Tulane University Law School, an organization accredited by the American Bar Association, as the certifying organization.

In March of 2012, the Louisiana Attorney Disciplinary Board consolidated the contempt charges with the advertising charges upon motion by the ODC. Before the scheduled disciplinary hearing, the parties filed pre-hearing memoranda to the presiding committee. In its memorandum, the ODC moved to dismiss the contempt charges, reasoning that it believed it lacked sufficient evidence to meet its burden of proof. The contempt charges were dropped, and the ODC

proceeded against Loughlin with only the advertising charges.

As required by the disciplinary procedures, Loughlin submitted the names of the witnesses he intended to call at the hearing. Tweed was not identified as a witness. In his memorandum, Loughlin stated that he "did not maintain a web site on or about October 13, 2011, as ODC alleges," and demanded "clear and convincing proof to the contrary." In the same memorandum, Loughlin attacked the constitutionality of Rule 7.2(c)(5)(B) based on this Court's decision in Public Citizen, Inc. v. Louisiana Attorney Disciplinary Board, 642 F. Supp. 2d 539 (E.D. La. 2009).[4]

The hearing was held on February 5, 2013, by a three-member committee of the Louisiana Attorney Disciplinary Board. Loughlin's constitutional claims arise from the proceedings at his disciplinary hearing.

At the hearing, Loughlin objected to the ODC's introduction of an exhibit that showed a screen shot of Loughlin's Web site with the allegedly offending language.[5] Tweed, who was representing the ODC in the matter, responded that Loughlin had waived his right to object because Loughlin had previously stipulated to the exhibit in accordance with the disciplinary procedures. Loughlin argued:

---

[4] As more fully explained later, in that case, this Court held that certain Louisiana Rules of Professional Conduct pertaining to attorney advertising were unconstitutional. But the rules that Loughlin allegedly violated, however, were not addressed by the Court.

[5] The exhibit was labeled, "ODC 1."

ODC 1 is a new exhibit. I had no objection to the old exhibit, which is just part of the formal webpage. The new exhibit contains the, whatever you call it, the scroll or the writing at the bottom of the page indicating the date of October 2011, when it was evidently viewed, which is one of the issues in this case, as whether the website was even accessible in 2011, 2010, or part of 2009. So that goes to that issue.

My understanding is, although ODC is the complainant, nobody from ODC is going to testify to say this is an authentic webpage that I viewed on X date and here it is.

Tweed responded, "The only difference between the prefiled exhibit and this one is that the exhibit sticker covered the date. We simply moved the sticker so that the date could be revealed."

Loughlin replied:

The date is a material difference between these two exhibits. The date goes to whether this website was even around. And there's no testimony laying that foundation. There's no one to testify saying it's authentic, it's genuine, that this was seen by the complainant in October 2011, whatever date it was.

Tweed pointed out:

The exhibit with the date on it was attached to the formal charges. And the date is visible on the formal version that's attached to the formal charges. So I don't know why this would be an issue now.

Upon further protests by Loughlin, Tweed stated:

I pulled it up. In part of my research into the other charges that have been dismissed, I pulled up his website. I saw it.

A panelist on the committee responded:

I don't think there would be an objection to you testifying to that limited.

Tweed, who was representing the ODC, then said:

8

> I can't testify. I mean, I can tell the committee right
> now that on October 13, 2011, I personally went to
> Google. I typed in Kearney Loughlin, Attorney, New
> Orleans. The first link that came up was
> Loughlin&Loughlin.com. I hit the link, and ODC Exhibit 1
> was the first thing I saw, and I printed it out and sent
> it to him and provided him notice.

Loughlin maintained his protests, arguing that he should have an opportunity to cross-exam any witness and that he was entitled to have Tweed's statement in evidentiary form. The Chairman of the committee ruled on the issue:

> Being that the date was visible on the copy attached to
> the formal charges, I don't think there's any surprise
> going on here. I'll rule it admitted.

The hearing committee issued a report on May 21, 2013, finding that Rules 7.2(c)(1)(B) and 7.2(c)(5) did not apply to Web sites, but that Loughlin's use of the word "specializing" violated former Rule 7.4. The committee recommended that he be publicly reprimanded, required to attend a continuing legal education program on lawyer advertising, and assessed costs.

Loughlin objected to the hearing committee's report and briefed the issues to the Louisiana Attorney Disciplinary Board, which held oral argument on July 18, 2013. Nine months later, the Board issued its ruling, in which it adopted all of the hearing committee's factual findings. The Board, however, rejected the hearing committee's conclusion that Rules 7.2(c)(1)(B) and 7.2(c)(5) do not apply to Web sites, but agreed that ODC had failed to prove a violation of those rules because there was not clear and

convincing evidence that Loughlin's Web site was online at the time the rules were in force.[6] The Board agreed with the hearing committee that Loughlin's former Web site violated former Rule 7.4. The Board noted, however, that there was insufficient evidence in the record to reach a conclusion on the constitutionality of Rule 7.4. Nonetheless, the Board agreed with the sanctions imposed by the hearing committee.[7]

Loughlin appealed the Board's ruling to the Louisiana Supreme Court. The State's high court dismissed all charges against him, finding that his actions in drafting his Web site were not taken with a culpable mental state and that they caused no harm to the public. In re Loughlin, 148 So.3d 176, 178 (La. 2014). The Supreme Court did not reach the constitutional issues.

Loughlin then filed suit in this Court seeking damages under Section 1983 against the defendant, Gregory Tweed, for violating his constitutional rights. Specifically, Loughlin contends that Tweed falsely asserted that his Web site was online in 2011, and that Tweed initiated charges against him as the complaining witness and later refused to give sworn testimony and be cross-examined. He also claims that Tweed "knowingly concealed the Judgment rendered by this Court [in Public Citizen] and knowingly concealed the

---

[6] The current rules took effect in 2009.

[7] Loughlin also contends that the Board refused to consider representations the Board had previously made to the Fifth Circuit in Public Citizen, 632 F.3d 212 (5 Cir. 2011).

judicial admissions and representations made by defendants to the
Fifth Circuit [also in <u>Public Citizen</u>]." He also claims that the
attorney advertising rules are unconstitutional and seeks to enjoin
the defendants from enforcing them. Finally, he asks the Court to
hold the defendants in contempt for enforcing the advertising rules
contrary to this Court's order in <u>Public Citizen</u>.

Given the importance the plaintiff places on the Court's
decision in <u>Public Citizen</u>, it is necessary to reiterate the
Court's findings. In that case, the Court held that the following
Rule 7.6(d) was unconstitutional:

> Advertisements.   All computer-access communications
> concerning a lawyer's or law firm's services, other than
> those subject to subdivisions (b)[8] and (c)[9] of this Rule,
> are subject to the requirements of Rule 7.2 when a
> significant motive for the lawyer's doing so is the
> lawyer's pecuniary gain.

The Court distinguished Internet information from the more popular
fads of tv, radio, and print solicitations of law cases, and found
that the defendants, which included the Louisiana Attorney

---

[8] Subdivision (b) is entitled "Internet Presence" and
governs "[a]ll World Wide Web sites and home pages accessed via
the Internet that are controlled, sponsored,, or authorized by a
lawyer or law firm and that contain information concerning the
lawyer's or law firm's services."  Subdivision (b)(3) states that
such Web sites "are considered to be information provided upon
request and, therefore, are otherwise governed by the
requirements of Rule 7.9."  Rule 7.9, in turn, states that such
information shall comply with the requirements of Rule 7.2 unless
otherwise provided in Rule 7.9.

[9] Subdivision (c) applies to unsolicited electronic mail
communications.

Disciplinary Board:

> ha[d] not shown that the State studied online advertising
> techniques or methods and then attempted to formulate a
> Rule that directly advanced the State's interests and was
> narrowly tailored with respect to Internet advertising.
> Instead, the State, through its high court, simply
> applied the same Rules as those developed for television,
> radio, and print ads to Internet advertising.  This Court
> is persuaded that Internet advertising differs
> significantly from advertising in traditional media.

Public Citizen, 642 F.Supp.2d at 559.   Holding Rule 7.6(d)

unconstitutional, the Court found that the defendants had not met

their burden of showing that the Rule directly and materially

advanced the State's interests or was narrowly tailored.   Id.

Tweed contends that he is entitled to qualified immunity. He

claims that he Googled "Kearney Loughlin, New Orleans, attorney,"

in his official capacity as a deputy of the ODC in connection with

his investigation of the contempt charges filed against Loughlin on

June 23, 2011; that he acted in accordance with his official duties

by submitting the potential violation to the ODC for screening.

Tweed claims that Loughlin fails to overcome the applicable

burden of proof to show that (1) Tweed violated the plaintiff's

constitutional right; and 2) Tweed's conduct was objectively

unreasonable in light of clearly established law at the time of the

conduct. Because he followed the Rules of Professional Conduct that

were in effect by orders of the Louisiana Supreme Court, and none

of those rules had been declared unconstitutional, Tweed submits

that what he did was not objectively unreasonable in initiating

12

charges against Loughlin.

With regard to Loughlin's Sixth Amendment claims, Tweed, for purposes of this Court's decision, points out that prior to the disciplinary hearing, Loughlin never advised Tweed that he wanted him to testify. He did not list Tweed as a potential witness in his pre-hearing memorandum, which required that all potential witnesses be identified. Nor did he seek to subpoena Tweed to testify. Even at the hearing, while he argued that Tweed should testify, he did not ask the hearing officer to compel Tweed to testify. Under the circumstances, Loughlin waived his right to call as a witness.

All defendants contend that Rules 7.2(c)(5) and former Rule 7.4 pass constitutional muster because they only restrict commercial speech that is false or inherently likely to deceive, which the Supreme Court has found receives no constitutional protection. The Rule restricts "*only* communications that state or imply that a lawyer is 'certified,' 'board certified,' an 'expert' or a 'specialist,' and *only* if a lawyer is not actually certified as a specialist." (Emphasis in original). The defendants point to empirical evidence in the record that establishes that the term "specialist" is inherently deceptive in the mind of the public.

Alternatively, the defendants urge that the challenged rules are only "potentially" misleading, in which case they still pass constitutional muster under the <u>Central Hudson Gas & Electric Corp. v. Public Service Commission</u> test. 447 U.S. 557, 563-64 (1980).

13

They claim that the challenged rules are narrowly drawn to directly advance the substantial state interests of protecting the public from misleading lawyer advertising and maintaining the standards and integrity of the legal profession.

Loughlin counters that defendant Tweed was not performing his discretionary duties as disciplinary counsel when he initiated the advertising complaint. Rather, he claims that Tweed was the complaining witness. Based on this premise, the plaintiff concludes that Tweed is not entitled to qualified immunity.

Loughlin adds that the defendants have not rebutted the presumption that the rules are unconstitutional. He claims that Rule 7.4 (which has been replaced by Rule 7.2(c)(5)) is an overbroad, content-based restriction of truthful speech.[10]

The plaintiff also attacks Rule 7.2(c)(5). He claims that the Rule does not apply to attorney Web sites. He says that Web sites are governed by Rule 7.6(b), which also subjects Web sites to Rule 7.9. His combined reading of those rules is that attorney Web sites are not a form of advertising and are not governed by Rule 7.2.[11]

The plaintiff seeks to enjoin the defendants from applying the

---

[10] Curiously, the plaintiff spends half of his twenty-page brief discussing the constitutionality of Rule 7.4 - a rule that no longer exists.

[11] But Rule 7.9(a) specifically states, "Information provided about a lawyer's or law firm's services upon request [e.g., a Web site] shall comply with the requirements of Rule 7.2 unless otherwise provided in this Rule 7.9."

advertising rules to attorney Web sites, incorrectly invoking this this Court's decision in <u>Public Citizen</u>.

## I. Standard

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio.</u>, 475 U.S. 574, 586 (1986). A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. <u>See</u> <u>id</u>. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. <u>Id</u>. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. <u>See</u> <u>Donaghey v. Ocean Drilling & Exploration Co.</u>, 974 F.2d 646, 649 (5 Cir. 1992). Rather, he must come forward with

15

competent evidence, such as affidavits or depositions, to buttress his claim. Id. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5 Cir. 1987); FED. R. CIV. P. 56(c)(2). Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

## II. The Effect of Public Citizen

In Public Citizen, Inc. v. Louisiana Disciplinary Board, et al., the Court considered the constitutionality of several Louisiana Rules of Professional Conduct as they relate to attorney advertising and the First Amendment. 642 F. Supp. 2d 539 (E.D. La. 2009), *aff'd in part and rev'd in part*, 632 F.3d 212 (5 Cir. 2011). There, the Court held that the following Rule 7.6(d) was unconstitutional:

> Advertisements. All computer-access communications concerning a lawyer's or law firm's services, other than those subject to subdivisions (b)[12] and (c)[13] of this Rule, are subject to the requirements of Rule 7.2 when a significant motive for the lawyer's doing so is the

---

[12] Subdivision (b) is entitled "Internet Presence" and governs "[a]ll World Wide Web sites and home pages accessed via the Internet that are controlled, sponsored, or authorized by a lawyer or law firm and that contain information concerning the lawyer's or law firm's services."

[13] Subdivision (c) applies to unsolicited electronic mail communications.

lawyer's pecuniary gain.

The Court distinguished Internet information from the more popular fads of tv, radio, and print solicitations of law cases, and found that the defendants, which included the Louisiana Attorney Disciplinary Board:

> ha[d] not shown that the State studied online advertising techniques or methods and then attempted to formulate a Rule that directly advanced the State's interests and was narrowly tailored with respect to Internet advertising. Instead, the State, through its high court, simply applied the same Rules as those developed for television, radio, and print ads to Internet advertising. This Court is persuaded that Internet advertising differs significantly from advertising in traditional media.

Public Citizen, 642 F.Supp.2d at 559.  Holding Rule 7.6(d) unconstitutional, the Court found that the defendants had not met their burden of showing that the Rule directly and materially advanced the State's interests or was narrowly tailored.  Id.

Relying on the Court's decision in Public Citizen, Loughlin seeks to enjoin or estop the defendants from applying the attorney advertising rules to his Web site. He references excerpts from argument held before this Court and briefs submitted to the Fifth Circuit in which counsel representing LADB argued that Web sites are different from advertisements because Web sites are "information upon request." His portrayal of Public Citizen is incorrect.

This Court in Public Citizen struck down a rule that subjected

all "computer-access communications" to the requirements of Rule 7.2 *except* Web sites and unsolicited electronic mail. Web sites were unaffected by the Court's decision regarding Rule 7.6(d). Moreover, both parties agree that *Rule 7.6(b)* governs attorney Web sites. That Rule expressly states that attorney Web sites "are considered to be information provided upon request and, therefore, are otherwise governed by the requirements of Rule 7.9." Accordingly, the plaintiff's contention regarding the LADB's position in <u>Public Citizen</u> is off the mark.[14] The plaintiff's request to enjoin the defendants from applying the advertising rules to Web sites based on this Court's decision in <u>Public Citizen</u> is patently misguided. The Court did not address the applicability of the advertising rules to attorney Web sites in <u>Public Citizen</u>. Nor does the Court resolve that issue here.

### III. Section 1983 Claims

#### A.

Title 42, U.S.C. § 1983 creates a damages remedy for the violation of federal constitutional or statutory rights under color of state law; it provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any ... person within the

---

[14] Attorney Web sites *are* "information upon request" under Rule 7.6(b). However, "information upon request" is still subject to the general requirements of Rule 7.2 pursuant to Rule 7.9(a).

jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

To establish § 1983 liability, the plaintiff must satisfy three elements:

(1)  deprivation of a right secured by the U.S. Constitution or federal law,

(2)  that occurred under color of state law, and

(3)  was caused by a state actor.

Victoria W. v. Larpenter, 369 F.3d 475, 482 (5 Cir. 2004) (citation omitted).

Tweed responds to Loughlin's § 1983 claims by asserting qualified immunity. When a plaintiff seeks money damages from government officials for alleged violations of constitutional or statutory rights, officials sued in their individual capacities may invoke the defense of qualified immunity. Because it is an immunity from suit and not a defense to liability, courts are advised to resolve the issue "at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam).

"Qualified immunity shields government officials from civil damages liability," the U.S. Supreme Court has reiterated, "unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Reichle v. Howards, 132 S.Ct. 2088, 2093 (2012)(citing Ashcroft v.

19

al-Kidd, 131 S.Ct. 2074, 2080 (2011)); Harlow v. Fitzgerald, 457
U.S. 800, 818 (1982) (This doctrine protects government officials
against individual civil liability "insofar as their conduct does
not violate clearly established statutory or constitutional rights
of which a reasonable person would have known."). In other words,
qualified immunity "protects all but the plainly incompetent or
those who knowingly violate the law, so we do not deny immunity
unless existing precedent must have placed the statutory or
constitutional question beyond debate." Morgan v. Swanson, 659
F.3d 359, 370-71 (5 Cir. 2011) (en banc) (internal quotations,
citations, and footnotes omitted).  "Qualified immunity balances
two important interests -- the need to hold public officials
accountable when they exercise power irresponsibly and the need to
shield officials from harassment, distraction, and liability when
they perform their duties reasonably." Pearson v. Callahan, 555
U.S. 223 (2009) (noting that "[t]he protection of qualified
immunity applies regardless of whether the government official's
error is a mistake of law, a mistake of fact, or a mistake based on
mixed questions of law and fact.").

    In resolving a government official's qualified immunity
defense, courts have traditionally applied the two-prong process
articulated in Siegert v. Gilley, 500 U.S. 226 (1991), and
confirmed by the Supreme Court again in Saucier v. Katz, 533 U.S.
194 (2001).  First, the Court must determine whether the plaintiff

has shown a violation of a constitutional right. Id. at 201. The second inquiry requires the Court to consider "whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." Pearson v. Callahan, 555 U.S. 223 (2009). Although the Supreme Court has left to the district court's discretion the sequence for undertaking these two inquiries, the Supreme Court has increasingly indicated a preference for first considering whether a purported right was clearly established by prior case law "without resolving the often more difficult question whether the purported right exists at all." Reichle, 132 S.Ct. at 2093 ("This approach comports with our usual reluctance to decide constitutional questions unnecessarily."); Camreta v. Greene, 131 S.Ct. 2020, 2031 (2011) (observing that "our usual adjudicatory rules suggest that a court should forbear resolving this issue") (emphasis in original); Pearson, 555 U.S. at 238-39 (listing circumstances in which courts might be best served to bypass the first step of the Saucier process, such as "when qualified immunity is asserted at the pleadings stage, the precise factual basis for the plaintiff's claim or claims [is] hard to identify").

Once a defendant has invoked the defense of qualified immunity, the burden shifts to the plaintiff to show that the defense is unavailable. Collier v. Montgomery, 569 F.3d 214, 217-18 (5 Cir. 2009); McClendon v. City of Columbia, 305 F.3d 314, 323 (5 Cir. 2002) (en banc). "Although qualified immunity is

'nominally an affirmative defense,' the plaintiff bears a heightened pleading burden 'to negate the defense once properly raised.'" <u>Newman v. Guedry</u>, 703 F.3d 757, 761 (5th Cir. 2012) (quoting <u>Brumfield v. Hollins</u>, 551 F.3d 322, 326 (5th Cir. 2008)). In response to a qualified immunity defense, "plaintiffs suing governmental officials in their individual capacities must allege specific conduct giving rise to the constitutional violation." <u>Anderson v. Pasadena Indep. Sch. Dist.</u>, 184 F.3d 439, 443 (5 Cir. 1999); <u>see also</u> FED. R. CIV. P. 7(a).

Public officials are summarily entitled to qualified immunity unless (1) the plaintiff adduces sufficient evidence to raise a genuine dispute of material fact suggesting the official's conduct violated an actual constitutional right; and 2) the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the conduct. <u>Poole v. City of Shreveport</u>, 691 F.3d 624, 627 (5 Cir. 2012)(quoting <u>Brumfield v. Hollins</u>, 551 F.3d 322, 326 (5 Cir. 2008).

B.

The plaintiff claims that Tweed's actions violated his constitutional rights under the First and Sixth Amendments. The facts underlying the plaintiff's Section 1983 claims are not in dispute. The record shows that Tweed entered "Kearney Loughlin, New Orleans, attorney" into a Google search and was able to pull up a Web site titled "Loughlin & Loughlin." The Web site stated,

"Loughlin & Loughlin is a plaintiff-oriented pure litigation firm specializing in maritime personal injury and death cases." Tweed took a screen shot of the Web page and submitted it to the ODC for screening. Based on the use of the word "specializing" on the Web page, the ODC opened a case against Loughlin for potential violations of the Louisiana attorney advertising rules. The Court addresses the alleged constitutional violations in turn.

### 1.

Loughlin alleges that Tweed violated his First Amendment rights by: 1) falsely asserting that Loughlin's Web site was accessible in October of 2011; and 2) falsely asserting that Loughlin's Web site violated Louisiana's attorney advertising rules.

### i.

Loughlin's response to the ODC's initial complaint was that he thought his Web site was not accessible to the public. Upon receipt of the ODC's complaint, he contacted his Web host company to request that it remove the Web page. Loughlin attached an email correspondence between him and his Web host representative in which he stated, "This web site is supposed to be offline and not accessible pending substantial revisions. I learned yesterday that at least some of the web site can still be seen." The representative replied on the following day, "All pages have been

completely removed from our server and are no longer accessible. For some reason the Practice Area page was still listed in Google. If someone used that link they could see part of the site and navigate through it bypassing the redirect to the holding page we created."

In his answer to the ODC's formal charges, Loughlin reiterated, "Although the website was off-line, the Office of Disciplinary Counsel was able to access a single page of the website on October 13, 2011." Nonetheless, on the day of his disciplinary hearing, Loughlin asserted that, "one of the issues in this case [is] whether the website was even accessible in 2011 . . . ." Even viewed in a light most favorable to the plaintiff, the record is clear that Loughlin had full knowledge that Tweed was able to access his Web site in October of 2011. Loughlin's claim that Tweed falsely asserted that the Web site was accessible in October of 2011 is betrayed by his own admissions.

ii.

Loughlin also alleges that Tweed violated his First Amendment rights by falsely asserting that Loughlin's Web site was subject to the attorney advertising rules. Tweed responds that he is entitled to qualified immunity because his conduct was not objectively unreasonable in light of clearly established law at the time. Loughlin replies that Tweed is precluded from the defense of qualified immunity because he was not performing a discretionary

function of his office. And that is pivotal to this question.

Tweed's entitlement to qualified immunity turns on whether he was acting in his official capacity as deputy disciplinary counsel or as a complaining witness when he submitted the screen shot of Loughlin's website to the ODC for screening. Tweed maintains that he discovered the Web site in the course of his investigation involving the contempt charges filed by the ODC against Loughlin on June 23, 2011, which were eventually dismissed. Loughlin responded to those contempt charges in August of 2011. Two months later, on October 13, Tweed discovered the alleged offending language on Loughlin's Web site after searching for his name on the Internet.

Louisiana Supreme Court Rule XIX § 4(B) vests the disciplinary counsel with the following powers and duties:

> (1) To screen all information coming to the attention of the agency to determine whether it concerns a lawyer subject to the jurisdiction of the agency because it relates to misconduct by the lawyer or the incapacity of the lawyer.

> (2) To investigate all information coming to the attention of the agency which, if true, would be grounds for discipline . . . .

> (3) To dismiss or recommend probation, informal admonition, a stay, the filing of formal charges, or the petitioning for transfer to disability inactive status with respect to each matter brought to the attention of the agency.

(4) To prosecute before hearing committees, the board, and the court discipline, reinstatement and readmission proceedings, and proceedings for transfer to or from inactive status.

Additionally, Rule XIX § 11(A) says:

The disciplinary counsel shall evaluate all information coming to his or her attention by complaint or from other sources alleging lawyer misconduct or incapacity.

Tweed correctly submits that these rules obligated him to investigate Loughlin in connection with the contempt charges. Tweed's position throughout the course of the disciplinary proceedings was that he searched for Loughlin's name during the performance of his investigatory duties. The close proximity between the time that Loughlin filed a response to the contempt charges in August of 2011 and the time Tweed discovered Loughlin's Web site in October of 2011 adds credence to Tweed's testimony. Loughlin has never disputed this fact.

Upon discovering the potential advertising violation on Loughlin's Web site, Tweed took a screen shot and submitted it to the ODC's screening department. Loughlin maintains that these actions make Tweed the "complaining witness" in the case. The Court finds that Loughlin's characterization of Tweed as the "complaining witness" is misguided.

Tweed was obligated by his duties as deputy counsel to investigate the contempt charges filed against Loughlin. It was not unreasonable for Tweed to search for Loughlin's name on the

26

Internet. Upon discovering the Web site, Tweed was required "[t]o investigate all information coming to the attention of the agency which, if true, would be grounds for discipline." Tweed was not a vigilante, who happened upon a potential conduct violation; he discovered the Web site while conducting an official investigation for the Bar committee. As deputy disciplinary counsel, Tweed fulfilled his duty to evaluate and screen the new information that he discovered on Loughlin's Web site. Thus, Tweed was acting in his official capacity and not as a complaining witness.

Loughlin fails to satisfy the two-part test for qualified immunity because on this record, Tweed's conduct in charging him with violations of the advertising rules was not objectively unreasonable in light of clearly established law. Tweed points out that "[a]ll of the cited rules are currently in effect by Orders of the Louisiana Supreme Court," and none of the rules were among those declared unconstitutional in <u>Public Citizen</u>. The Court agrees.

### 2.

The Court has already determined that Loughlin mischaracterizes Tweed as the "complaining witness," and that Tweed was acting in his official capacity as disciplinary counsel at the hearing. Loughlin never identified Tweed as a potential witness in his pre-hearing papers, nor did Loughlin ever request the hearing committee to compel Tweed's testimony.

27

Accordingly, Gregory Tweed's, motion for partial summary judgment on the plaintiff's Section 1983 claims is GRANTED.

## IV. Constitutionality of the Advertising Rules

The United States Supreme Court first recognized that commercial speech is protected under the First Amendment in Virginia State Board of Pharmacy in 1976.  425 U.S. at 770. The Supreme Court recognized that some regulation of commercial speech is "clearly permissible," but cautioned also that a state "may not do so by keeping the public in ignorance" of truthful information. Id.  Commercial speech is thus afforded less First Amendment protection than other constitutionally guaranteed expression. See id.; Bates v. State Bar of Arizona, 433 U.S. 350, 363-64 (1977); Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y., 447 U.S. 557, 561-62 (1980). The Supreme Court applied First Amendment protections to attorney advertising in Bates v. State Bar of Arizona, holding that "advertising by attorneys may not be subjected to blanket suppression," but finding that advertising by attorneys may still be regulated in some ways. 433 U.S. at 383.

"For commercial speech to come within [the First Amendment's protections], it at least must concern lawful activity and not be misleading." Bd. of Trustees of the State University of N.Y. v. Fox, 492 U.S. 469, 475 (1989). Therefore, "truthful advertising related to lawful activities is entitled to the protections of the First Amendment," whereas "[m]isleading advertising may be

prohibited entirely." <u>In re R.M.J.</u>, 455 U.S. 191, 202-03 (1982);
<u>see</u> <u>Fla. Bar v. Went For It, Inc.</u>, 515 U.S. 618, 624 (1995)).
Information that is only potentially misleading, however, may not
be banned entirely. <u>See In re R.M.J.</u>, 455 U.S. at 203. Rather, as
articulated in <u>Central Hudson Gas & Electric Corp. v. Public</u>
<u>Service Commission</u>,447 U.S. 557, 563-64 (1980) states may regulate
non-misleading or potentially misleading advertising only if they
show a substantial interest, the regulation is narrowly drawn, and
the interference with speech is in proportion to the interest
served.

This Court must therefore decide first if the language that
the attorney advertising rules seek to restrict is either
inherently misleading or has been proven to be misleading; if so,
the state may "freely regulate" it. <u>Went for it</u>, 515 U.S. at 623-
24.  If the advertising is not misleading, or is only potentially
misleading, this Court must then apply <u>Central Hudson</u> to determine
if the restrictions are narrowly tailored to further a substantial
government interest.  In making these determinations, the Court
notes that "[i]t is well established that 'the party seeking to
uphold a restriction on commercial speech carries the burden of
justifying it.'"  <u>Edenfield v. Fane</u>, 507 U.S. 761, 770 (1993)
(quoting <u>Bolger v. Youngs Drug Products Corp.</u>, 463 U.S. 60, 71 n.20
(1983)).  "This burden is not satisfied by mere speculation or
conjecture; rather, a governmental body seeking to sustain a

restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." Id. at 770-71.  The Fifth Circuit has held that evidence used to justify the state's regulation need not exist pre-enactment.  Pruett v. Harris County Bail Bond Bd., 499 F.3d 403, 410 (5 Cir. 2007).

### A.

The defendants contend that the speech at issue restricted by the advertising rules is not entitled to constitutional protection because the speech in question is false, inherently likely to deceive, or claims a quality of service not susceptible of measurement or verification.  In support, they point to a survey commissioned by the American Bar Association's Committee on Specialization.  The survey teaches that "the public expects a lawyer who claims to be a specialist to have certain qualifications not necessarily expected of a non-specialist in the same field of law, and to do a better job than a non-specialist." The defendants' justification for regulating the word "specialist" is "to assure the public that a lawyer claiming to be a specialist meets the standards the public expects of the lawyer." A simple acknowledgment of common sense.

### 1. Rule 7.2(c)(1)(B): Statements About Legal Services

This Rule prohibits a lawyer from making false, misleading, or

deceptive communications about the lawyer, the lawyer's services, or the law firm's services. Because the restrictions apply only to commercial speech that is "false, misleading, or deceptive," this Rule plainly finds shelter within the commercial speech jurisprudence.

## 2. Rule 7.2(c)(5)(B): Communications of Fields of Practice

This Rule prohibits an attorney from stating or implying that he is a "specialist" without meeting certain qualifications. Specifically, the attorney must either comply with Louisiana's Plan of Legal Specialization or state the full name of the ABA-accredited certifying organization. While the specialist survey relied upon shows that the public attributes value to a person who claims to be a "specialist," Loughlin never used the word "specialist." But, his Web site stated that his firm was a "plaintiff-oriented pure litigation firm specializing in maritime personal injury and death cases." Is there some profound difference between "specialist" and "specializing"? Plaintiff would have this Court split hairs. The Court finds that Loughlin's description of his firm as one "specializing in" maritime personal injury and death cases is as functionally misleading as stating that one is a "specialist," and therefore advances a substantial state interest.[15]

---

[15] See infra Part B; see also THE AMERICAN HERITAGE DICTIONARY (2d ed. 1982).

### 3. Former Rule 7.4: Replaced by Rule 7.2(c)(5)

Former Rule 7.4 prohibited an attorney from stating or implying that he was certified, an expert, or a specialist unless recognized as such by the Louisiana Board of Legal Specialization. The plaintiff spends a great deal of time discussing the constitutionality of a repealed rule. The Court need not give an advisory opinion on the constitutionality of a rule that is no longer in effect.  Rule 7.4 was reenacted as Rule 7.2(c)(5). The Court's consideration of the latter Rule renders the constitutionality of former Rule 7.4 moot.[16]

### B.

The defendants assert two substantial state interests: 1) protecting the public from unethical and potentially misleading lawyer advertising; and 2) maintaining the ethical standards and integrity of the legal profession. The Fifth Circuit held in <u>Public Citizen</u> that "protecting the public from unethical and potentially misleading advertising and preserving the ethical integrity of the legal profession" are both substantial government interests. 632 F.3d 212, 220 (5 Cir. 2011).

"[A] governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are

---

[16] The Court also notes that all charges against Loughlin have been dropped. Thus, Loughlin has suffered no injury from former Rule 7.4.

real and that its restriction will in fact alleviate them to a material degree." Public Citizen, 632 F.3d at 220; Edenfied. v. Fane, 507 U.S. 761, 770-71 (1993); Zauderer v. Office of Disciplinary Counsel of Sup. Ct. of Ohio, 471 U.S. 626, 648-649 (1985). Defendants may do so with empirical evidence, studies, and anecdotal evidence. Public Citizen, 632 F.3d at 220-21. The High Court has also justified restrictions on speech based solely on history, consensus, and "simple common sense." Florida Bar v. Went For It, Inc., 515 U.S. 618, 628 (1995).

Noting that "consumers find legal services amongst the most difficult to buy," the ABA Committee on Specialization explained:

> While advertising may be somewhat useful in assisting consumers in finding a lawyer, it can also lead to misunderstanding and confusion about the lawyer's skill and expertise. The proliferation of lawyer advertising has created an even greater need to objectively identify those with the requisite degree of skill.
>
> A certification addresses a genuine public need for better information on the qualifications and capabilities of lawyers. Survey results indicate consumers find information about a lawyer's specialty expertise useful. Indeed, the American public is so accustomed to certification of specialists, particularly professional specialists, that some people now believe any lawyer who has a specialty practice is board certified.

The empirical evidence shows that the public associates the term "specialist" with an elevated quality of credentials. As such, a lawyer claiming to be a specialist without basis is likely to mislead a person seeking legal services. Limiting use of the word

"specialist" to only those attorneys who have attained, through approved certification programs, the heightened skill set commonly associated with a specialist protects the public from potentially misleading forms of advertisement. Thus, the specialist rule directly advances a substantial state interest.

Therefore, IT IS ORDERED that the defendant, Gregory Tweed's, motion for summary judgment on the plaintiff's Section 1983 claims is hereby GRANTED.

IT IS FURTHER ORDERED that the defendants' motion for summary judgment on the plaintiff's claims that the Louisiana Rules of Professional Conduct are unconstitutional is hereby GRANTED.

The plaintiff's claims are hereby dismissed with prejudice.

New Orleans, Louisiana, October 1, 2015

_____

MARTIN L. C. FELDMAN

UNITED STATES DISTRICT JUDGE